on behalf of the Appellant, Sonoma County Association of Retired Employees, Raymond Lynch on behalf of the County of Sonoma. All right. Thank you. Will both of you be arguing? Yes, I will be arguing on my side. Yes, we're opposing. Oh, you're opposing. With me today, I'm going to be arguing on behalf of the Appellant, Sonoma County Association of Retired Employees. And then both of you will be arguing. Yes. All right. Thank you. And with me today at council table is Sasha Steinberger, another attorney in my firm. Oh, thanks. All right. Please proceed. And I'd like to reserve five minutes for rebuttal, if I could. All right. That's the entire time. So when you see five minutes, that's what you have left. Correct. All right. As I stated, Your Honors, I represent the Sonoma County Association of Retired Employees, which consists of more than a thousand retired former employees of the county, most of whom worked decades for the county in exchange for, among other things, future payment by the county for their health benefits during all of their retirement years, and most of whom live on pensions of $2,000 or less a month. Starting in 19 — excuse me, in 2009, the county drastically slashed the health benefit reimbursements that it would pay to my clients, to the members of SCARE. There can be no dispute that for more than 40 years, resolutions of the County Board of Supervisors and collective bargaining agreements called Memorandum of Understanding, or MOUs under state law, explicitly promised to pay retiree medical benefits. Is there any dispute between you and the county that the resolutions in the MOUs are contracts? Whether they include the terms that you say they do is another question, but it seems like the threshold is, are those contracts? Well, I don't think that there can be any dispute. I won't speak for the county. Judge Wilkin, in her decision, did not find there was a question as to whether those were contracts. What she found was that because they did not explicitly contain language guaranteeing the benefits in perpetuity, that there was no contract for vested benefits. For those terms, right? For those terms. Those documents themselves, there's no dispute that you know of that they constitute contracts in some theoretical way, I guess. And I don't think there can be after the decision of the California Supreme Court in the Retired Employees Association of Orange County case. But before Judge Wilkin, did the county take that position that they were not contracts? I don't believe it did, Your Honor. I think it took the position that Judge Wilkin ultimately took, which was there was no contract for vested benefits. Whether – I don't remember every word in the county's briefs on that issue. I don't want to make a misrepresentation on behalf of Mr. Lynch. So if they're contracts, then the question would be whether, in light of the Supreme Bureau case, then the question would be whether you adequately allege to or plausibly allege to Survivor motion to dismiss that they included implied terms. Isn't that the new question? And, of course, Judge Wilkin didn't have the benefit of REAC, so she would know that was the issue. Absolutely, Your Honor. And you are correct. And in that regard, it's helpful to compare what was in REAC, which was then remanded by this Court to the district court after the California Supreme Court case, with the evidence that we've alleged or the allegations that were made in our complaint. In REAC, and I quote the Supreme Court decision, to count the extrinsic or parole evidence of the additional terms of contract consisted of, quote, the county's longstanding and consistent practice of pooling retirees and actives along with the county's representations to employees regarding a unified pool. Here we have the following, and these are all in the First Amendment complaint. The drafters of the resolutions for the Board of Supervisors, including the county's human rights director, human resources directors, for 31 of the years in question will testify as to the background, purpose, and statements made about those resolutions. We'll have testimony from at least one member of the Board of Supervisors, at least as what the complaint alleges, and who served for 20 years plus, that, in fact, statements were made to county administrators about the lifetime nature of the benefits and what the benefits substantively entailed. We'll have job announcements, job offers, and retirement-related documents distributed by the county. In addition, though, in the county's rules for who qualified for these, the county had vesting-like requirements. In other words, it said if you work 20 years, you will have these benefits, you will have retirement benefits. And these sound a lot like pensions, and I think obviously when you have a 10-year or 20-year vesting period, everybody would understand that in a pension context that means you get them for life. And by using similar requirements, I think the county also implied that these benefits would vest for life once the employee worked a given number of years specified. In addition, we have the county's decades of compliance with the promises. For over 40 years, the county paid 85 to 100 percent. And is that in the complaint? Is that alleged in your complaint? It's all in the complaint, Your Honor, yes. If you look at the First Amendment complaint, paragraph 21 and paragraph 23, which are in excerpt of record 65 and 66. And with regard to the alternate claim, which has to do with the different substantive promise of how much the county would pay, which is the tie agreement, we have additional evidence, which is the positions the county has unequivocally taken in other proceedings, that is, in disputes with its unions, that that promise was in perpetuity. And that allegation is in the complaint, and there's also in the request for judicial notice that we filed with this Court. Counsel, are you seeking the same remedy that was reached in the REACT case? Are you seeking a remand to the district court for consideration in light of the California Supreme Court's decision? Yes, we are. That's exactly what we're asking of this Court, that we be given the opportunity to prove through this extrinsic evidence, which I've just described in categories, in the district court, that there was an additional implied term. Well, that's a little different than just remanding it for the court to consider. You're saying that you want an opportunity to prove, but the district court could still look at the REACT case and say that there was not sufficient evidence in the resolutions or MOUs to proceed further, right? Well, I think there – I'd like to divide my answer in two, if that's okay. Okay. We're seeking remand for the district court to consider the case on the pleadings in light of REACT. So you're not at – But I think this Court could go further, Your Honor, because if you compare, if you want to, of course you don't have to, if you compare what's in our complaint as far as what the evidence beyond the resolutions and ordinance is and collective bargaining agreements is with what the California Supreme Court said was sufficient in REACT, we have far more alleged. So – So, I mean, what we have before us is the district court dismissed the complaint. And so you're asking for a reversal there? You're asking us to send it back for the district court to reconsider its dismissal. I'm going to – I'm asking for a reversal, because I believe on the allegations in the complaint, we more than meet the plausibility tests set forth in Iqbal and Twombly and the other – and the Ninth Circuit decisions interpreting it. So I think, yes, in light of REACT, we have sufficiently pled and plausibly pled the evidence from which the existence of implied terms beyond the words of the resolutions and collective bargaining agreements can be implied. Now, opposing counsel argues that you waived that, and they point particularly to your statement to the district court that it shouldn't wait to see the result of REACT because there was no implied contract at issue in your case. Well, there are two claims that we made, two alternative arguments that we made in support of our breach-of-contract claim in the complaint. One was what we've been talking about up until now, Your Honor, which was the implied term of an express contract, i.e., that there are express contracts which promised retiree benefits. Those are the MOUs and the Board of Supervisors resolutions, and that you could imply from extrinsic evidence additional terms, namely vesting and the amount of the county's payments. That's argument one, and that's what we've been talking about. And that was what was before the Court on the second motion to dismiss. The county's argument that we waived, the argument has to do with the alternate theory under which our breach-of-contract claim could proceed, which is a wholly implied contract. That is quite a part, which was the theory that REACT did not reach. It was actually the question certified to the California Supreme Court by the Ninth Circuit in REACT, can you have a wholly implied contract? And the California Supreme Court really didn't answer that question. It said they expressly held it open, right? Exactly. They expressly held it open. And we did not waive that. And the district court on four, first of all. So the first point is it has nothing to do with the implied term of contract issue. And what happened was on the first motion to dismiss, the district court said, among other things, said it was dismissing, it was, it would dismiss our claim because, among other things, we had not, you couldn't have an implied contract. It said that. In fact, in the county's brief on the second motion, which raised only the implied term of express contract issue, the county acknowledged, I'm looking for the quote here, Your Honor, the county acknowledged, and this is at ER-46, that in granting the first motion, the district court had, quote, rejected plaintiff's claim of an implied contract. In the district court's decision on the second motion to dismiss, the court said that it had recognized in the first ruling that, quote, in a public employment context, oral promises and other extrinsic evidence could not form a contract. So, counsel, just so I understand your answer to Judge Akuta's question, is it your position here today that you are not asserting the existence of an implied contract? No, Your Honor. We're also asserting that. And we acknowledge that REAC did not decide that. And did you waive any assertion of an implied contract in the district court? No, we did not. And as we said, it was the court had decided against us on that in the first motion to dismiss. We did not remove any allegations to the complaint when we amended it. And all we said, and there's a footnote to our brief saying, that issue is not before the court on this motion, is the words of the quote. And the district court acknowledged that it already had ruled on that theory in the first motion dismissed. There was no waiver. It was still the same words were still in the pleading, plus some. The district court specifically said it wasn't before, that she had already ruled on that issue. But so on appeal, are you pressing an express contract with implied terms and an implied contract as well? Well, we are arguing both, and I would support both, Your Honor. We would hope that on remand we wouldn't have to get to the implied. Even if this Court allows us to proceed on both theories on remand, we would hope we wouldn't even have to reach the wholly implied contract issue because obviously there's no reason for you. It's going to be easier, to be candid, to establish a case based on an implied term of express contract. But, yes, if this Court, we are asking this Court to agree with us that you can also have a wholly implied contract. And in REOC, the California Supreme Court said, quote, where the relationship is governed by contract, a county may be bound by an implied contract or by implied terms of a written contract. So those are both cognizable, as long as there's no statutory prohibition against such an agreement. Well, they sort of cast some gloom on the idea of a compensation contract being a wholly implied. Well, I think because of Section 2500 of the government code, I think that's the issue they did not reach. They said it's allowed unless it's prohibited by statute. And 25, they did not reach the issue of whether 2500 prohibited it. Do you, in your 28J letter about Harris, you said you didn't think the language in Harris affected your claim here. Do you want to explain that point? Yes. Well, there are two points to make. First, in the portion of Harris which dealt with the claim that was at issue in REOC, actually the same exact claim, but just seeking damages, and which is the analogous claim to what we have here, the Court acknowledged REOC and said REOC allows you to prove an implied term of contract. It then went on to an additional claim, which wasn't at issue in REOC, which is called the grant claim, which is an additional sum of money that the county was supposed to have promised. And that claim, there was no allegation of an implied contract or implied term of contract. And we've cited the Court to the record in that case, consisting of the briefs and I believe the complaint in our 28J response, which showed that the plaintiffs did not plead anything other than an express contract with regard to the grant claim. And so I agree. I think the Court's wording in Harris is a little confusing because its citation to the district court decisions in our case is confusing because our district court decisions didn't deal with an allegation of a wholly expressed contract. So I would say those are the main two points about Harris. And Harris, even then, when you read further in the opinion, said, well, I think used the word or otherwise, that the plaintiffs might be able to amend on remand to add express language or otherwise. And so I don't think Harris really has any impact on this case. Thank you. Thank you, counsel. Excuse me. There's a question. Chuck. Yeah. Whatever contract is made has to be with the board of supervisors, does it not? Yes, it does. We can't have implications from others who are talking about it and so forth. It has to be either a direct contract from the board of supervisors or something in the action of the board of supervisors that creates the implied contract. That is correct, Your Honor. And, of course, on the first theory of the implied contract, excuse me, the implied term of an expressed contract, we have that. We don't have that problem because we are talking about implying terms into a board of supervisor resolution or a memorandum of understanding that the board has approved. On the wholly implied contract theory, Your Honor, it's correct, but we believe there are actions taken by the board of supervisors which manifest their agreement to these terms, which are statements made by supervisors to county administrators for the purpose of conveying them to employees. Well, that's that. Yes, that's the question. You say or supervisors and so forth. I think it has to be from the board of supervisors themselves. I agree with you, Your Honor, but the question that the court did not address, did not reach in REIOC, is whether a resolution or ordinance is the only way that a board of supervisors can, in fact, agree to something. And that's the question that was left open in REIOC, and we believe in our briefs we've explained why we think that, in fact, the board of supervisors can manifest its agreement to something by actions other than formal resolutions or ordinances. Okay. Counsel, we'll give you one minute for rebuttal. Go ahead. One minute. One minute, Your Honor. This is Raymond Lynch representing the county of Sonoma. This is fundamentally, fundamentally a question in a case of contract formation. The district court dismissed the First Amendment complaint because it found no contract had been formed. It was correct. When I read those decisions, though, it wasn't that no contract had been formed, but no contract with those terms in it had been formed. Now, do you dispute that the MOU and the resolution are contracts at all? We dispute that the resolutions that have been identified, and mind you, the Retirement Association had access to all of them for, really, in perpetuity, to pardon the pun. And so our position is that on those resolutions, no contract was ever identified and that REAC and the others. So the resolution isn't a contract for what it says in its own, or the MOU. Because the MOU reads like a contract and it's signed and all that, and it says we'll provide such and such for this period of time. Are you saying that's not a contract? With respect to the MOUs, we acknowledge that they're contracts, but they don't say they don't support the claim. They don't have the other terms. And how about the resolutions? Are you saying the resolutions are not contracts? We're saying the resolutions are not contracts under REAC because REAC, and actually it relies on language from this Court's San Diego police case and a 1985 Supreme Court case that states, and it's quite clear, that legislation, a resolution, an ordinance, is presumed not to create a contractual right. It's a heavy burden for a plaintiff to overcome that. And the colloquy here between Judge Hugg and counsel I think highlights that. There's really got to be some action taken by the Board of Supervisors to show that there was an intent, clearly a vinced intent, legislative intent, by that body as a whole, in total, to grant a contractual right. And that's because anything else would be opening up the possibility that to blindside the governing body or the public for unexpected obligations. So, counsel, may I ask you, opposing counsel had referred to the prospective testimony of one supervisor to support the contention that a contract had been formed. So is it your view that the testimony of one supervisor would not be sufficient to establish the existence of a contract? Indeed. That is only one person on a Board of Supervisors, and it's got to be a majority vote on the Board of Supervisors. I think one person from the Board of Supervisors testifying to something does not establish the claim. But we're not talking about establishing the claim here. We're just talking about plausibly allege enough to, you know, survive a motion to dismiss. So is it your thought that they would have to allege that every Board member would so testify in order to survive a motion to dismiss on the claim? Or at least the majority of the Board. To really get to that, I think you have to go back to the legislative documents. You have to look at the REAC's admonition that you look for clearly vinced legislative intent. But it doesn't have to be in the writing. I mean, it seemed like REAC was pretty clear that you could look outside of the plain language of the contract because there could be implied terms based on circumstances or promises or whatever it is. That seems to muddy the water somewhat. I think so. But let me try to, if I may humbly bring clarity to that. Because what it says is it's in the language of the contract or in the circumstances accompanying passage of the legislation. First of all, accompanying passage is a contemporaneous concept. And legislative intent is important. How do you ascertain legislative intent? Traditionally, one looks at the legislation itself, at the materials that were before the Board of Supervisors, at the record of proceedings, when this body, not one person, not two persons, but this body in its deliberative function to set legislation has considered something and made a determination. And in this case, the Retirement Association has had complete access to all of those materials. Now, how about the course of conduct? Are you saying that's also limited to just the events around the formation of the resolution? Because REAC didn't seem to narrow it to that extent. I think the course of conduct, REAC talks about the circumstances accompanying passage, so I think that's true. I also think that pure practice, just because something was done, does not rise to the level of a contractual obligation. Standing alone, it needs to be anchored, tethered to something in the legislative language that they're seeking to enforce as a contract. So the California Supreme Court seems to say we just use general California implied contract law, even though it's a special type of contract here. It's legislation. Well, I think it's gone further than that. I mean, it talks about the Constitution, which grants the authority to the Board of Supervisors to set Counsel, you keep pulling away from the microphone. If you want me to hear you, you're going to have to stay in touch with the mic. All right. I apologize, Judge Huck. The REAC case also talked about Government Code Section 25300, which is quite clear and if you go through the decision, you'll see that that is legislation that requires formal Board of Supervisor action, a resolution or an ordinance, not something else. But didn't the Supreme Court say that there could still be implied terms in those contracts? That was what was confusing to me. But first, you have to have a contract, and REAC makes clear that the legislation itself is presumed not to be, and that you have to overcome that. You have to overcome that under the standard to stay a claim under REAC, and also you have to meet Iqbal and Twombly pleading requirements. And in this instance, there's been a vast amount of information provided to the Retiree Association. I would like to address briefly the MOUs, though, because there's a couple of points on the MOUs. First of all, I don't believe that the plaintiffs in this case ever sought to enforce the MOUs. Paragraph 5 of the complaint and the First Amendment complaint both state that there could be greater rights under these MOUs for some of their members, because some of their members were formally represented by different unions, mind you, and some were not, that there could be different rights, but they were not seeking to allege them or enforce them in this action. And that's really the way that I think everyone understood this. Certainly Judge Wilkin did, because in her order she found they were not seeking to enforce the MOUs, but instead trying to use some of the language in there to transfer it over to the board resolutions that were proffered to support the contractual claim, and she found them wanting. But she didn't stop there and went through them and looked at them and said, they're all durationally limited, durationally limited contracts, which is certainly true. They're renegotiated every three years. So counsel, just so I understand your argument, so are you contending that the plaintiffs were seeking to enforce the resolutions as opposed to the MOUs, excuse me, and just use the MOUs as support for their argument based on the resolutions? Is that your argument? Absolutely. Absolutely. And I would go so far as to say that that position that they were seeking to enforce the MOUs in that fashion really was not articulated in that fashion until the reply brief, and I would also note that in the opening brief, Judge Wilkin's finding that the Retiree Association was not seeking to enforce the MOUs was not challenged as one of the principal issues presented to this Court. And certainly in a case where we view it as contract formation, if that were true, that finding should have been challenged. But I also would say that the MOUs themselves, with the information that was proffered, do not support the claim, and I think that comes, Judge Ikuda, to your point. I mean, the resolutions themselves are not contracts, so we don't believe a contract was ever formed, and REOC really sets forth some stringent standards for you to do that. And first you have to have the contract before you can even imply the right, and the California Supreme Court went on when you tried to imply a term, a right in perpetuity, that you have to find language in the contract itself or convincing, convincing extrinsic evidence. And I don't believe that that's been pled here, and there's been quite an opportunity to do so. So counsel, both you and opposing counsel filed 28J letters with your interpretations of Harris. Yes. Tell us why your interpretation of Harris should be adopted by this Court. I believe that the Harris Court was correct in the portion that we're talking about, and that is the absolute need to establish a contractual right to identify a resolution or an ordinance that you can tether, anchor your claim to. Now, opposing counsel says that that language is addressing the part of the appellant's argument that was saying there's an express contract. So it's more equivalent to what Judge Wilkin was looking at. So there's an express contract, and we said, no, there's not, that we don't see that language. But that didn't relate to the issue that REAC analyzed, which is could you have implied terms in a contract. Is that, do you disagree with that analysis of the case? I do because it's incomplete. Because a complete reading of REAC, if you walk through it, what you see is that there is extensive language by the California Supreme Court about contract formation, and it is a very limited opinion. I submit that it's stating that it's theoretically possible to imply a term in a resolution, but first you have to establish that that resolution or ordinance is indeed a contract, and then you move on to determine if there is clear, convincing evidence to infer the term into that. In your view, how would a resolution be transformed into a contract? The clearest way would be to have expressed terms within the resolution where the legislative body, in this case the Board of Supervisors, makes clear that they're establishing a contractual right. So they seem to say, I mean, if you read the resolution, they have the whereas clauses, and then they say, and so therefore this is what we are going to provide our employees. So it seems pretty specific. What more would be necessary? Would they have to add a term saying, and we intend this to be a contract? Or how would, why isn't that sufficient, the way they're laid out? Well, in part, because they're presumed, the concept that it's legislation, and the reason for the presumption that's well recognized is because it can change. Because Well, contracts can change. Contracts can change, too. But this is not for a specific term. A new Board of Supervisors can come in and make different terms. But that doesn't make it any less a contract at the time because a different board can change the terms. So why couldn't it be a contract for the specific period of time that it exists? Because we're just asking, is this a contract in the abstract? I don't think that there's anything in the resolutions. It's admitted by, I think it's acknowledged by everyone, that there's no language to support the claim contract right that's asserted here in the resolutions. Well, it's not the one that they're asking for. It doesn't have those express terms. But it does seem to make specific promises. One of the resolutions makes reference to this pension-like language that opposing counsel has talked about. But if you look at that, that language is stating that it's only eligibility requirements for people hired after a certain point in time. And it's on the same manner and the same basis as people that retired prior to that. Well, why isn't that an agreement on the part of the county? Why isn't that an agreement? Because that's all a contract is, is an agreement. Why is that not an agreement? It doesn't go far enough because you have to parse through that to decide what is the same manner and the same basis. You have to look back. That's the terms. It's the terms. But I'm asking just, is that an agreement at that point? Regardless of what the terms are, would that be enough to constitute an agreement? I don't think so. Why not? I don't think so. Because it's only setting forth a circumstance under which someone might be able to receive something. But the something, the something, you have to find in a resolution or an ordinance, that source. And that's referencing something in the past. And no such resolution or ordinance was ever identified. So is it your position that the resolutions that have been identified by the plaintiff are merely expressions of eligibility requirements? Is that your argument? That's, it's, the argument is that it was never, it never rose to the level of a contract. They never overcame the presumption. But what is it then? If it's not a contract, what is it? How would you describe it? What's a resolution doing? What is it, what is the purpose? What is it doing? At most, it's setting forth how something is going to take place until such time as it's repealed by the Board of Supervisors. I would also briefly address the implied contract issue because I don't believe that an implied contract, a pure implied contract, as opposed to one with implied terms, can be stated against a California county for compensation terms. But REAC held that open. So they expressly held it open. They did hold that open because the Court did not need to reach it. But if you, in my view, if you read, when you look at REAC and REAC's discussion of Government Code Section 25300 of the California Constitution, of the jurisprudence on establishing a contract and the difficulty in doing so with legislation, when you put all that together, I can't conceive of how an implied, pure implied contract could be ever established without Board of Supervisor action, formal action that it in some manner found its way into a writing. But that would, wouldn't that be expressed, though? If they, if it found its way into a writing, that wouldn't, wouldn't that be expressed? It would. So are you saying that there can never be an implied contract in the government sector? A pure implied contract for compensation, I believe, is prohibited by Government Code Section 25300. And REAC stands for, it states that when it's talking about implied contracts, that if there's a legislative prohibition, such a claim can't be stated. Right. We understand your position. Thank you, counsel. You've exceeded your time. Thank you very much. Rebuttal. One minute. Briefly, Your Honor. First of all, on the question of whether or not we allege that the MOUs were contracts out of which our clients had rights and which then could have additional implied terms, I would direct the Court to our, and to the extent Judge Wilkin said we didn't, Judge Wilkin was wrong, because in directing your attention to the supplemental excerpt of record found, filed by the county at page 53, there's a whole section of our opposition to the county's motion, second motion to dismiss, where we specifically say we are asserting the MOUs as contracts which had implied terms. As far as whether – sorry, Your Honor. As far as whether – I think there's some confusion going on here in argument about whether or not between the implied term of a contract that exists in writing pursuant to an MOU or Board of Supervisors resolution and a purely implied contract. But focusing just on the first for a beginning, I'm just going to read you one of the Board of Supervisors resolutions, and they're all pretty much identical over the years. Quote, and this is at ER 158. The county provides contributions toward the payment of health care benefits for retirees as follows. Then some other language. The county shall contribute toward the cost of county-offered medical insurance for any eligible retiree and their dependents in the same manner as specified for eligible employees. That's a contract. Nobody could dispute that, at least for the one year during which that salary resolution is in effect, the county was obligated to pay those benefits. The issue in this case, and this is the issue in REOC, because the resolutions were no different in REOC, is whether or not there can be an implied term that if you retire during that one year, you therefore have a vested right to that same contribution for life. That's the issue in this case. And there's a long – that's what REOC says can be shown by extrinsic evidence, and we have certainly pled more extrinsic evidence in our complaint than at least the California Supreme Court identified as sufficient in REOC. Did you have a question, Judge? No. Any questions? Judge Hugg? No. Thank you. Thank you to both counsel. Thank you, Your Honor. The case just argued is submitted for decision by the Court. We'll be in recess for 10 minutes.
judges: Hug, Rawlinson, Ikuta